BARBER et al. v. VLASTO.

VLASTO v. BARBER et al.

(District Court, S. D. New York. July 31, 1900.)

1. SHIPPING — LIABILITY OF SHIPPER FOR DEAD FREIGHT—ERROR OF MASTER.
    The owners of a vessel cannot recover dead freight from a shipper on account of his failure to load the full quantity of stone contracted to be carried where there were no facilities for weighing the stone, and the shipper accepted the estimate of the master that the full quantity had been loaded.

2. SAME—LIABILITY OF OWNERS FOR ACTS OF MASTER.
    Vessel owners cannot be held liable to a shipper for the amount of an overpayment made by him to miners for a cargo of stone furnished him for loading the vessel because the master overestimated the amount loaded and the shipper accepted his estimate as the basis for making such payment, where it does not appear that the master acted fraudulently.

In Admiralty. Libel for freight and cross libel for damages.

Convers & Kirlin and George Whitfield Betts, Jr., for Barber & Co.

Stern & Rushmore and Charles C. Burlingham, for Vlasto.

BROWN, J. The above libel was filed to recover a balance of $671.90 freight due on 893 tons of white stone brought from Greece by the libelants' chartered steamer Heathfield in October, 1898, and

also·for the recovery of about $1,600 dead freight for not loading some 607 tons more to make up the agreed quantity of 1,500 tons. The answer of the respondent and the cross libel allege the steamer's refusal to carry more than' the 893 tons taken on board, and demand certain special damages for the refusal.

By the contract, the ship was to load from 1,500 to 1,800 tons of stone at Kalimaki ${}^{and}/_{or}$ Kymassi. The 893 tons were taken from lighters at St. Theodore, within the port of Kalimaki, while the ship · lay in an open roadstead where the water was so rough that her exact draft could not easily be taken, and there were no facilities for weighing the stone on shore before it was put on the lighters. The officers of the ship, as appears from their testimony, however, easily enough perceived when all the stone at St. Theodore had been loaded, that the ship had on board much less than 1,500 tons. The mate testifies that before leaving St. Theodore he told Mr. Vlasto he thought there was only about 900 tons. Mr. Vlasto denies this, and testifies that the master told him twice that there were about 1,500 tons on board, although he could not be sure about this owing to the difficulty of observing the exact draft in rough water; that he told the master if there were not 1,500 tons aboard the ship he must go to Kymassi for the remainder; that he had to pay the miners 15 francs per ton for mining the stone brought by them to St. Theodore, deducting 5 per cent. for uncertainty in weight; and that the master assured him that the amount laden would not vary 5 per cent. from 1,500 tons; and that the respondent thereupon paid the miners for 1,500 tons less 5 per cent. in the master's presence. The steamer thereupon left St. Theodore, and arrived at Patras, about 350 miles distant, where it was found in still water that her cargo of stone was only about 900 tons; she proceeded homeward, however, taking in other cargo on the way.

Upon the conflicting testimony, as to what was said at St. Theodore in reference to the amount of stone taken on board, I am inclined to give credit substantially to the testimony of Mr. Vlasto, and that the master's statements were such as to lead him to believe that there were 1,500 tons on board or within 5 per cent. of that amount. Otherwise considering that the respondent had a contract in New York obliging him to supply that amount and that he had engaged the Heathfield to bring that quantity, it is not credible that he would have omitted to require the steamer to go to Kymassi where he had thousands of tons in waiting for shipment, as the ship was bound to go if necessary to make up 1,500 tons; and it is equally incredible that he would also have paid the miners so greatly in excess of their dues. He was accustomed to rely for the weight of cargo taken at St. Theodore on the rough computation from the vessel's draft, and I have no doubt he relied on the master's statements of his estimate in this case.

I must hold the master responsible for so gross an error in loading. The evidence makes it clear that the other officers did not share in this error, and I must hold it without excuse. It is possible that the master failed to take account of some .450 tons of water ballast then in the ship, in reckoning the amount of the cargo from the apparent draft. But this in no way relieves the ship or the

charterers, who had contracted to carry at least 1,500 tons; and if he was not aware of the great deficiency when he left St. Theodore, it was because of his own gross negligence in not properly observing his ship or consulting with his chief officer, who knew better. The master knew that the respondent relied on the ship's draft, and on the master's estimate therefrom, in determining the tons loaded, and that he was bound to go to Kymassi for any deficiency. The estimate entered in the bill of lading has no bearing on this question.

The libelants' claim for dead freight cannot, therefore, be allowed. There was no refusal by the respondent to load the full amount agreed on; on the contrary, he was anxious to send the whole amount agreed. That it was not taken, was mainly at least the captain's own fault even if the respondent be considered remiss in not making approximate estimates of weight from the capacity of the lighters, and the number of lighter loads, which were reported to him. The master's neglect is chargeable upon the libelants as his principals.

I do not find, however, that the master's course was fraudulent; and for that reason the respondent cannot charge the libelants for the payment made to the miners. That was no part of the ship's business, and in relying upon the master's estimates of weight for making such payments to the men, the respondent has no legal cause of action against the master, or his principals, except for fraud.

The libelants are entitled to the balance of their freight less only the increased cost to the respondent, if any, of the freight for the transportation of the residue of 607 tons. Should the latter exceed the balance of freight owing, the respondent, as libelant in the cross libel, is entitled to a decree for the excess, and a reference may be taken to compute the amount due, if not agreed on.